UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:13-CR-90-KKC-REW-2 |
| | ) | No. 5:16-CV-259-KKC-REW |
| v. | ) | |
| | ) | |
| TERRAN RICARDO PRICE, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Movant, Terran Ricardo Price, is a federal inmate. DE #398-2, at 1. On June 27, 2016,[1] Price filed a *pro se*[2] motion under 28 U.S.C. § 2255, *see* DE #384 (Motion), which he later supplemented with a standard § 2255 form and lengthy supporting memorandum, *see* DE #398-2, a notice to correct filing, *see* DE #408, and various exhibits, *see* DE #409. The United States responded in opposition. DE #412 (Response). Price replied. DE #413 (Reply, labeled "Traverse"). The matter is ripe for consideration. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #384) and issue **NO** Certificate of Appealability.

---

[1] The filing date reflects the prison mailbox rule, liberally construed. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Price dated (and, thus, presumably executed) the motion June 27, 2016. DE #384, at 7. He stated that he deposited the motion in the prison mailing system, but did not explicitly state the day on which that occurred. *Id.*

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

1

## I.   BACKGROUND INFORMATION

On June 13, 2013, a grand jury charged Price (among many Co-Defendants) with one count of conspiring to distribute Oxycodone. DE #1 (Indictment). He pleaded guilty, without a written plea agreement, on January 29, 2014. DE #211 (Rearraignment Minute Entry). Judge Caldwell sentenced Price on May 28, 2014. DE #272 (Sentencing Minute Entry). Movant received a total prison sentence of 132 months followed by 5 years of supervised release. DE #275 (Judgment). Price appealed; the Sixth Circuit affirmed. DE #378 (Sixth Circuit Order). Price next timely submitted a § 2255 motion to vacate, DE #384, supplemented as described above, *see* DE ##398, 408, 409. The Government responded. DE #412. Price replied. DE #413.[3] The motion stands ripe for review. The Court wholly rejects each of Movant's varied claims, though he argues them well, and recommends dismissal. No basis exists for a Certificate of Appealability.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28

---

[3] Price's Fed. R. Civ. P. 8 arguments regarding the Government's response, sprinkled throughout the Reply, are misplaced; they effectively ignore Rules 4 and 5 of the Rules Governing Section 2255 Proceedings. The Eleventh Circuit explained: "Because the plain language of Rule 4(b) of the § 2255 Rules did not require the district court to order the government to file a response to [the] § 2255 motion, we hold that pursuant to Rule 8(b)(6), the government was not deemed to have admitted [Movant]'s allegation of ineffective assistance of counsel by failing to deny the allegation specifically in its response to his motion." *Tarver v. United States*, 344 F. App'x 581, 583 (11th Cir. 2009); *see also, e.g.*, *United States v. Boniface*, 601 F.2d 390, 392-93 (9th Cir. 1979) (contrasting "the pleading requirements of the Federal Rules of Civil Procedure" with the laxer requirements of a Governmental response to a § 2255 motion, which, "under Rule 5 . . . need only 'respond to [now, even more broadly, "address"] the allegations of the motion'"). The preclusive civil pleading rules do not here apply, and the Government did effectively contest all substantive issues.

U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.    ANALYSIS

In the § 2255 motion and accompanying documents, Price requests relief based on (1) allegations of ineffective assistance of counsel (IAC) at sentencing, generally centered

3

on the applied weapon- and role-related Guideline[4] enhancements,[5] as well as *Bostic*-related complaints; (2) alleged constitutional violations (and allegations of IAC) regarding forfeiture of bond money; and (3) a complaint regarding the Government declining to move for the third level of acceptance of responsibility credit. DE #398-2, at 18-19 (table of contents providing summary of the arguments). Price also originally mentioned one other claim, *see* DE #384, at 4 (Issue V), concerning which he never provided additional detail or explanation. All theories plainly (and on this record, conclusively) fail under 28 U.S.C. § 2255 and the applicable standards.

A.      *Claim One—IAC at Sentencing*

Price first makes several IAC arguments. When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the

---

[4] All references to the United States Sentencing Guidelines are to the 2013 Manual, in effect at the time of Price's sentencing. *See United States v. Davis*, 397 F.3d 340, 346-47 (6th Cir. 2005); U.S.S.G. 1B1.11(a).

[5] Price wisely disclaims any attempt to directly relitigate these claims, *see* DE #413, at 7-8, which the District Court and Sixth Circuit already decided. Relitigation in this context, as the Government argues, would be a fruitless venture. *See DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances.").

circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. In the sentencing context, ineffective assistance "can result in *Strickland* prejudice because any amount of additional jail time has Sixth Amendment significance." *Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) (internal quotation marks, alteration, and citation omitted). Price raises a host of *Strickland* issues, each of which the Court definitively rejects.

### 1.    The U.S.S.G. § 2D1.1(b)(1) Enhancement

Price first argues that his attorney at sentencing, Hon. Matthew Robinson, was ineffective for failing "to know the law and present actual evidence to overcome the presumptions against Mr. Price." DE #398-2, at 34. Specifically, Price faults Robinson for "fail[ing] to hold the Government to proving the nexus between the location of the gun and its accessibility, functional[ity], and relation to the charged offense," *id.* at 35, and for "not present[ing] key evidence in the form of an exculpatory witness, and police reports which would have shown that it was 'clearly improbable' the gun was connected to the conspiracy." *Id.* at 36. The United States responded. DE #412, at 3-5.

5

The Sixth Circuit, in this very case, succinctly described the legal framework for evaluation of this enhancement at sentencing:

> [U.S.S.G. s]ection 2D1.1(b)(1) provides for a two-level increase to a defendant's offense level "[i]f a dangerous weapon (including a firearm) was possessed." It is the government's initial burden to show "by a preponderance of the evidence that the defendant either actually or constructively possessed [a] weapon." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (quoting *United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003)). If the government meets that burden, "[t]he burden then 'shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to the offense.'" *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012). The defendant's burden cannot be met with argument or speculation alone—evidence must be presented. *Id.*

DE #378, at 2-3. The Circuit then applied this framework to Price:

> The evidence supports the district court's finding that Price possessed a firearm. Sharon K. Stidham, one of Price's codefendants, testified that she obtained oxycodone pills from Price and Darrian Tomlin, another codefendant, to both use and sell. Stidham testified that, for approximately one year, she obtained oxycodone pills every day from Price and Tomlin at an apartment where they both lived. She testified that on one visit to the apartment, she observed rifles or shotguns there. She saw Price with one of the rifles, "but he laid it like up against the couch" when she came inside the apartment. She also testified that on another occasion she "held a gun for Tomlin and then [Price], he come [sic] and got it and took it to Detroit." Stidham described the gun that Price retrieved for Tomlin as a rifle or shotgun and stated that Price "said he was going to sell it" in Detroit.

> When overruling Price's objection to the firearm enhancement, the district court acknowledged that Stidham was "a drug addict and a dealer" during the time that she associated with Price. But the district court found her testimony clear regarding her observation of Price possessing a gun in the apartment he shared with Tomlin for the purpose of drug use and dealing, as well as her storage of a gun for Tomlin that Price ultimately retrieved. The district court also found "most compelling" the discovery of "a semiautomatic handgun under [a] couch" and oxycodone pills under "another couch in the same room" in Price's Detroit residence, while noting that an individual who was present in Price's Detroit residence "claimed ownership of the gun" but not the drugs. The district court also took into consideration Price's "history of gun possession." Under these circumstances, **the district court properly found that Price possessed a**

6

> **firearm and applied the USSG § 2D1.1(b)(1) firearm enhancement**.
> *See Greeno*, 679 F.3d at 515; *Wheaton*, 517 F.3d at 367–68.

DE #378, at 3 (emphasis added).

Price's first argument—that Robinson failed to hold the Government to meeting the proper § 2D1.1(b)(1) legal test—fails because the Sixth Circuit has already conclusively decided that "the district court properly found that Price possessed a firearm and applied the USSG § 2D1.1(b)(1) firearm enhancement." DE #378, at 3. The *Greeno* factors, which Price faults Robinson for improperly (or not) applying, are mere "consider[ations]" for the Court guiding the § 2D1.1(b)(1) analysis, "none of which is alone controlling." *Greeno*, 679 F.3d at 515; *see also, e.g.*, *United States v. Lucas*, 529 F. App'x 463, 466-67 (6th Cir. 2013) ("[N]one of [the *Greeno* factors] is dispositive . . . . Even if a firearm is unloaded, this does not preclude application of the enhancement."). Thus, even if counsel had raised all the complaints Price now levies, *see* DE #398-2, at 35-36, these would not have changed the § 2D1.1(b)(1) outcome; the Sixth Circuit, citing and applying *Greeno*, has already found that the Judge Caldwell "properly . . . applied" the enhancement based only on the information presented at sentencing. The additional argument points would not have altered the district court's endorsed analysis or result; indeed, most of Price's argument points were already before the Court at sentencing, and they did not change the District Judge's conclusion. "All that the government need show is that the dangerous weapon was possessed during 'relevant conduct,'" *Greeno*, 679 F.3d at 514 (internal alterations removed), which the United States indisputably did in this case. *See, e.g.*, DE #375, at 30-33 (Stidham describing Price in the Old Paris Road apartment in possession of "some guns" and Price later coming to her residence to "get" a sawed-off shotgun "to take . . . to Detroit" to sell). Robinson, who cited and argued the

proper standards in the sentencing memo, DE #247, at 11, was not constitutionally ineffective on this ground. *E.g.*, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition . . . counsel cannot be ineffective for a failure to raise an issue that lacks merit.").[6] Recall that Stidham testified to living upstairs from Price in a four-plex apartment house. She bought 100 oxycodone pills daily from Price and the conspiracy, *from the downstairs apartment*, for a year. DE #375, at 29. She held in her attic at the building a sawed-off shotgun that she transferred, at Price's request, to Price during the conspiracy. *Id.* at 31. Further, she "surprised" Price at his apartment—the dealing locus— leading to him brandishing, or at least holding, a firearm in her presence. *See id.* at 30, 32 ("yeah, they had guns on me"); 38 ("T had one[.]"). Regarding the Detroit firearm, without question, police seized a firearm from a couch in Price's residence, in the same room where a different couch concealed oxycodone.

Price's second argument is that Robinson ineffectively failed to call Gary Thomas to the stand during sentencing and failed to use a DEA report to bolster the defensive argument. DE #398-2, at 37-38. "If called," Price asserts, Thomas "would have stated on the record and under oath that: 1) He was present at Price's arrest in Detroit; 2) He was initially detained by the D.E.A. and eventually released; 3) When asked the gun found under cushions in the couch was his NOT Price's; and 4) Price was unaware of the gun." *Id.* at 37 (all as in original); DE #408, at 2 (same). Price says that the referenced DEA report "would have . . . corroborated" Thomas's testimony by showing "1) The hand gun was found under the Couch, not in plain sight; 2) Gary Thomas claimed ownership and

---

[6] Price blatantly misrepresents the record by arguing that Stidham testified to a late 2013 event involving Price in the Old Paris Road residence with multiple firearms. DE #398-2, at 35-36. Stidham did initially say that, but she later clarified that this occurred in *January* 2013, during the conspiracy. DE #375, at 42. She also clarified that the sawed-off shotgun incident occurred in 20*12*. *Id.*

proved it was his gun to Joyner's satisfaction; (3) They released Mr. Thomas because he was not connected to the conspiracy." DE ##398-2 at 37 (all as in original); 408, at 2.

This claim fails for a few reasons. First, and most obviously, Price presents no competent proof concerning Thomas's potential testimony. Though Price references a Thomas affidavit as "Exhibit 1," *see* DE #398-2, at 37, he did not attach any such affidavit to DE #398, and Price marked Exhibit 1 in his "Appendix of Exhibits" as "Reserved." DE #409. The Court sees no Thomas affidavit in the record. Such a speculative claim, supported by no proof from the alleged witness, does not lead to habeas relief. *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) ("[V]ague and speculative allegations" concerning witnesses do not entitle Petitioner to habeas relief.); *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) ("To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result.").

Further, even if Robinson had called Thomas, and even if Thomas had testified as Price speculates, the Court still sees no result of consequence. Robinson specifically proffered to Judge Caldwell concerning Thomas. DE #375 (Sentencing Transcript), at 23-24. Further, the Court was aware, at the time of (and well before) sentencing, of the DEA report (*Greeno* evidence) explicitly recording that Thomas claimed the gun. DE #122-2, at 5. The District Court and Sixth Circuit specifically acknowledged "that an individual who was present in Price's Detroit residence 'claimed ownership of the gun,'" DE #378, at 3, as Thomas allegedly would have testified, but applied the § 2D1.1(b)(1) enhancement regardless.

9

Indeed, Stidham "clear[ly]" testified "regarding her observation of Price possessing a gun in the apartment he shared with Tomlin for the purpose of drug use and dealing, as well as her storage of a gun for Tomlin that Price ultimately retrieved." *Id.*; *see also* DE #375, at 30-41 (Stidham testimony describing observing Price in the Old Paris Road drug house with guns and the sawed-off shotgun attic episode), 43-45 (Judge Caldwell explaining basis for finding, including acknowledging that "there was another person in the house who claimed ownership of the gun"). Judge Caldwell further found that the "factors tied together" as to the couch-hidden gun in Price's "own home," "suggest th[at] gun couldn't have belonged to anybody but Mr. Price," specifically distinguishing a situation where, for example, a defendant merely had "an unloaded hunting rifle in a closet." *Id.* at 43-45. Instead, "[t]his was a loaded semiautomatic weapon in the same room concealed under a couch in the very similar manner in which the defendant had concealed the drugs[.]" *Id.* at 45. Price's speculative proffer of alleged, potential Thomas testimony, in these circumstances, would change nothing regarding application of § 2D1.1(b)(1).[7] Accordingly, Robinson was not ineffective for failing to call Thomas as a witness or for any of the other reasons Price cites.

Even if Robinson did everything Price now suggests, Judge Caldwell would have encountered a record where Price had clearly possessed multiple firearms in the trafficking hub and also clearly had a loaded handgun in his Detroit home in close

---

[7] Accordingly, neither would re-stressing the referenced DEA report, which was already before the Court before sentencing and merely stated what the district court previously acknowledged, *see* DE #122-2 (filed 9/3/13) (*e.g.*, "THOMAS . . . claimed ownership of the handgun."), or "review[ing]" unidentified "Lexington Kentucky police reports of the raid on the Paris Road apartment[.]" *See* DE ##398-2, at 37; 408, at 2. Price does not cite to these alleged reports, and, per his proffer, they do not address the full range of enhancement conduct. If he intended to refer to DE #409, at 9-11, those documents merely reflect, as relevant here, that a cell phone "suspected to be" Co-Defendant Scaife's had dialed various numbers.

proximity to more oxycodone. He did have a record of firearm possession,[8] and the collection of circumstances strongly counters the contention now that Price could have shown a clear improbably as to the weapons' (or any one mentioned weapon's) connectedness. Counsel showed himself familiar with the proper analysis, and the record accounted for all appropriate factors. Price points to nothing here that credibly erodes the foundation for the Court's finding. Even accepting that Thomas might have been the source for contra proof as to the Detroit gun, Price points to no proof that would, with any weight, counter the strong and direct evidence from Stidham placing firearms in Price's hands at the trafficking site.

2.     The U.S.S.G. § 3B1.1(b) Enhancement

Next, Price argues that Robinson was ineffective for "fail[ing] to apply the Sixth Circuit's precedent in US v. Swanberg and apply common rules of evidence and argument to refute the proposed enhancement under U.S.S.G. § 3D1.1 [sic] 'Leadership Role.' [sic]" DE #398-2, at 38 (all as in original). Specifically, Price contends that Robinson ineffectively "failed to prepare, investigate, and call exculpatory witness(es) to impeach Ms. Lee's unsubstantiated allegation that 'Reece' was 'Fired' and subsequently re-hired by Price." *Id.* at 40. Movant also argues that Robinson ineffectively "did not expose the fact that the Government failed to meet it's [sic] burden[ b]ecause there was nothing on the record to show that Price was doing anything more than 'merely selling drugs to others.'" *Id.* at 41. The United States responded. DE #412, at 5.

The Sixth Circuit previously explained: "[U.S.S.G. s]ection 3B1.1(b) provides for a three-level increase to a defendant's offense level '[i]f the defendant was a manager or

---

[8] The PSR includes a *conviction* where a firearm figured prominently in the underlying facts. DE #308 (PIR), at ¶ 32. Price's argument about this misses Judge Caldwell's point.

supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive.'" DE #378, at 4. The Court of Appeals applied the standard to Price:

> The government presented testimony from Eva Lee and Jeannie Lowe. Lee, a codefendant, testified that she primarily bought oxycodone pills from Price and Tomlin and that their phone numbers "were the only two numbers [she] ever had." She stated that she never went to their apartment to purchase drugs without speaking to either Price or Tomlin first and that none of the other individuals at the apartment had authority to deal with her without first speaking with Price or Tomlin. Lee testified that on one occasion she and Reece, another codefendant, had exchanged phone numbers and that, when Price and Tomlin found out, they were upset. She stated that Price and Tomlin informed her that Reece "had been, quote, 'fired' for them having [her] number" and that she "was only to speak to one of them before making any deals and [she] was to only have their number or for [her] to have—them to have [her] number." Lee testified that when she spoke with Price on the phone regarding drug transactions, Price would direct her "where to go and who to meet."

> Lowe, also a codefendant, testified that Price and Tomlin were her primary sources of oxycodone pills and had people that worked for them in runner capacities. She stated that on several occasions she called Price for drugs and that he sent a runner to distribute drugs to her. She stated that there were times when she arranged drug transactions with Price or Tomlin, who sent "somebody else to meet [her] which would be one of the other boys."

> When overruling Price's objection to the role-in-the-offense enhancement, the district court reviewed the evidence presented and concluded that it suggested "control, authority and exercise of decision-making power" by Price. The district court found that Price participated in the planning and organization of the drug conspiracy and exercised "control over others and who they contacted, how they went about doing their own drug deal by virtue of being not only their supplier but by controlling or suggesting as to how they might go about picking up their pills and who they would pick them up from." The district court emphasized Lee's testimony about her contact with Reece when the two exchanged phone numbers without the knowledge of Price or Tomlin, how "she was corrected in her action," and how action was taken against Reece, at least temporarily. On this record, **the district court properly found that Price had "a manager or supervisory role [in] an organization involving more than five participants" and applied the USSG § 3B1.1(b) enhancement**. *See United States v. Mitchell*, 295 F. App'x 799, 802 (6th Cir. 2008).

12

*Id.* at 4-5 (emphasis added).

Price now contends that Robinson was ineffective for not calling Co-Defendant Maurice Williams (aka Reece) as a witness at sentencing to counter Lee's testimony and for failing to make arguments concerning certain Lexington Police reports. DE #398-2, at 40-41. Price tenders a Williams affidavit, where Williams makes various assertions and concludes by remarking, "No one was the boss or manager it was a group effort." DE #409, at 3 (Williams Affidavit) (run-on as in original).

At sentencing, Lee testified that "Reece got my number. It was really because I was going to get him something from McDonald's, . . . and they [a group including Price] found out that he had my number and they fired him." Williams counters in the affidavit that "I was never 'fired' or otherwise prevented from participating . . . in the conspiracy[.]" DE #409, at 3.

Lowe, for her part, described how she would buy drugs from Price. She would "call ahead," typically to Tomlin (aka Solo) or Price (aka Beans) "depending on who was in town." DE #375, at 64-65. "Mostly Solo and Beans is who [she] dealt with." *Id.* at 65. Even if Tomlin or Price was not present, she would still, nevertheless, normally "arrange[] the transaction through them[.]" *Id.* Lowe said that Price "ha[d] people that were working for" him, whom she described as "kids" and agreed could be properly characterized as "runners." *Id.* at 64. "Several" times, she called Price "and he sent a runner to deal with [her] to distribute pills." *Id.* Lowe picked up *only* Price from a bus station as he ferried Oxy pills to Central Kentucky from Detroit. *Id.* at 65-66. She described Price as "stay[ing] up north" in Detroit "[g]athering pills" for distribution. *Id.* at 66. Judge Caldwell considered the testimony of "both witnesses," Lee and Lowe, and

13

found the enhancement applied. *Id.* at 74-76. The Sixth Circuit endorsed the result. DE #378.

Price's argument regarding Robinson's failure to call Williams to testify at sentencing fails because (1) while introducing a nugget of competing proof on the limited "firing" point, Price in no way proves that Williams's proposed testimony probably would have altered Judge Caldwell's conclusion, and (2) Williams's affidavit addresses nothing regarding Lowe's testimony, an independent reason and basis to find no IAC.

First, if presented with Williams's affidavit testimony at sentencing, Judge Caldwell essentially would have had to make a credibility determination between Williams[9] and Lee. The District Judge previously found Lee credible by relying, in part, on her testimony to make the § 3B1.1 finding. While Price now offers the prospect of competing testimony on the "firing" point, he—as the § 2255 movant and the party here with the burden—does not address, in any way, the credibility battle that would have ensued or why Judge Caldwell would have discredited Lee in light of Williams's testimony. Nothing in the record, in the Court's view, suggests that Judge Caldwell would have credited Williams over Lee. Further, even if Judge Caldwell believed Williams on the "firing" issue, such testimony would not have called much of Lee's other testimony into doubt. For example, Lee testified that Price "direct[ed]" her in the conspiracy by, for example, instructing her to meet in the Walmart parking lot for drug transactions. DE #375, at 54, 60 ("[Price] had me meet his cousin Solo [at the New Circle Wal-Mart a few times]"; "[Price] directed me where to go and who to meet."). Thus, as to credibility on the narrow "firing" issue, Price has not proven that the sentencing result would be different, and, even if he surmounted that hurdle, other parts of Lee's testimony

---

[9] Williams pleaded guilty on the same day as Price.

endure to support application of this enhancement. Therefore, Price has not proven that Robinson was ineffective for failing to call Williams during sentencing.

Additionally, counsel's reasoned decisions as to which witnesses to call or refrain from calling are classic strategic matters, which a court generally does not second-guess on habeas review. *United States v. Foreman*, 323 F.3d 498, 504 (6th Cir. 2003). Here, had Robinson called Williams, the United States would have had the opportunity to cross examine him, and Williams, obviously with intimate information on the conspiracy and Price's role in it, could have revealed damning information regarding the § 3B1.1 issue (or other issues) as to Price. Robinson surely foresaw this danger, and the Court declines to second-guess his declination to call one of Price's co-defendants to the stand at sentencing. Robinson perhaps could have garnered marginally helpful testimony about the "firing" point (which, given Lee's other comments, would not have been the decisive factor regardless), but the prosecutor would have had the opportunity to probe for more damaging information. The Court cannot, on this record, say Robinson acted objectively unreasonably in eschewing potentially harmful testimony at sentencing.

Second, and as another independent reason to deny IAC relief here, even assuming Judge Caldwell would have credited Williams's proposed testimony as true and, further, entirely discredited Lee's, Williams does not purport to address or denigrate any of *Lowe*'s in-court testimony.[10] Lowe, to summarize, said that Price had numerous kids / runners "working for" him to distribute drugs and that she would typically call

---

[10] Price chooses to mostly ignore Lowe's testimony, baselessly asserting that "only Ms. Lee's testimony could be consider[ed] salient to the government[']s contention." DE #298-2, at 39. Judge Caldwell disagreed at sentencing, the Sixth Circuit disagreed on appeal, and the undersigned disagrees upon review of the record now. Judge Caldwell's sentencing comments expressly foreclose Price's assertion that "the Court's decision rested solely on Ms. Lee's testimony[.]" *Id.* at 41.

either Tomlin or Price to buy drugs. *Even when* neither was present or available for a transaction, Lowe would *still* arrange, normally, the buy through one of them. If Price or Tomlin "wasn't around, they would send somebody else to meet [her], which would be one of the boys." DE #375, at 70. Lowe characterized Price as orchestrating the conspiracy "up north" in Detroit, gathering pills for distribution through the conspiracy. Judge Caldwell explicitly relied on the testimony of "both witnesses"; Lowe's testimony thus was an independent basis for the § 3B1.1 finding. Based on the testimony, Judge Caldwell found even "[m]ore important[]" than Lee's statements that "there is more than one person who would qualify here as a manager or supervisor of this organization because it seems that both Bean[s] and Solo kind of were co-supervisors or managers[.]" DE #375, at 75. That is precisely the relationship Lowe described—a joint management relationship between Tomlin and Price, with Price as the supervisor "up north" in Detroit. The District Judge credited this testimony, and the Sixth Circuit affirmed that assessment. Price (through the Williams affidavit) offers nothing to call the prior valuation of Lowe's testimony into question, an adequate reason to conclude that Robinson did not provide ineffective assistance.

Finally, Price argues that Robinson "did not expose the fact that the Government failed to meet it's [sic] burden[ b]ecause there was nothing on the record to show that Price was doing anything more than 'merely selling drugs to others.'" DE #398-2, at 41-42.

This argument fails because the Sixth Circuit has already found that the district court "properly . . . applied" the § 3B1.1(b) enhancement. DE #378, at 5. Of necessity, therefore, the Circuit has already concluded that the Government did meet its burden. "To

qualify for a § 3B1.1(b) enhancement, [Price] 'must have been the manager or supervisor of one or more other participants.' U.S.S.G. § 3B1.1 note 2." *Mitchell*, 295 F. App'x at 802.[11] Lee's and Lowe's testimony—in Judge Caldwell's and the Sixth Circuit's prior review, and in the undersigned's independent assessment—constitutes sufficient record proof to show that Price was a manager or supervisor of one or more other conspiracy defendants. *See, e.g.*, *id.* ("Coordinating even a single delivery of drugs via a courier suffices to constitute 'management.'"); DE #375, at 63-66 (Lowe describing the runners / kids "working for" Price, Movant orchestrating the conspiracy "up north" in Detroit, Price directing her to pick him up from a Greyhound station, and the communication / control bottleneck Price erected around himself); *id.* at 70 (Lowe: "[W]henever Solo or Beans wasn't around, they would send somebody else to meet me which would be one of the other boys."); *id.* at 75 (Judge Caldwell finding that Price "exercise[d] some degree of control over others and who they contacted, how they went about doing their own drug deal by . . . controlling or suggesting as to how they might go about picking up their pills and who they would pick them up from"); *United States v. Munoz*, 233 F.3d 410, 416

---

[11] The factors Price cites, *see* DE #398-2, at 41-42, do not appear in *Swanberg*, as he asserts. Regardless, they are general tools to aid a court "[i]n distinguishing a leadership and organizational role from one of mere management or supervision," *see United States v. McDaniel*, 398 F.3d 540, 551-52 (6th Cir. 2005), or "[i]n determining whether a defendant warrants a role enhancement of any kind." *United States v. Penaloza*, 648 F. App'x 508, 513 (6th Cir. 2016). They are guideposts only, and the root finding is the one *Mitchell* succinctly states. *See, e.g.*, *United States v. Tanner*, 837 F.3d 596, 603 (6th Cir. 2016) (calling the factors merely "relevant" considerations); *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013) (calling the factors "a non-exhaustive list"). "A district court need not find each factor in order to warrant an enhancement." *United States v. Anderson*, 795 F.3d 613, 617 (6th Cir. 2015). The Sixth Circuit here saw no error in the District Court's analysis.

(6th Cir. 2000). Therefore, Robinson was not constitutionally ineffective regarding this argument.[12]

### B.    Claim Two—Forfeiture

Next, Price makes various arguments concerning forfeiture of bond money allegedly belonging to certain of his family members. He claims Fifth and Sixth Amendment violations based on forfeiture of "$35,000 belonging to family members." DE #398-2, at 49. Price asserts that "Robinson's complacency permitted these violations to deprive Price's family members of their rightful enjoyment of their property." *Id.* The Government responds that "[f]orfeiture of bond money is not a cognizable claim" under § 2255 because it "has no bearing on Price's sentence." DE #412, at 7.[13]

---

[12]    Price closes this section of the brief with an argument concerning *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). Price contends that Robinson failed to properly preserve objections to the §§ 2D1.1 and 3B1.1 enhancements, DE #398-2, at 43-44, as well as the "[d]ownward departure request and the one point of acceptance issue," *id.* at 45. The Court rejects the first argument out of hand. Contrary to Price's argument, Robinson wholly preserved the §§ 2D1.1 and 3B1.1 enhancement objections. *See, e.g.*, DE #375, at 90 (Robinson: "I would just lodge an objection to the overruling of our objections." Judge Caldwell: "I will note all of your objections, and they have been preserved for the record."). The Sixth Circuit reviewed each issue under the normally applicable standard of review. DE #378, at 2-5. There is no merit to Price's contrary assertions. The Court will assess the second *Bostic* argument later in this Opinion.

The Court likewise rejects any argument that Price improperly first included in the Reply that Robinson, overall, failed to put the Government's proof through an "adversarial testing process." DE #413, at 16. Review of the sentencing transcript establishes that Robinson zealously defended Price at sentencing, determinedly cross examined each Government witness, and won many benefits on Price's behalf (such as the Court sustaining the obstruction of justice-related objection). Robinson submitted an extremely detailed sentencing memorandum, *see* DE #247, and made 21 objections to the PIR. *See* DE #308. Robinson successfully and substantially succeeded in decreasing the applicable Guideline range from the USPO's original calculation of 188-235 (and successfully argued against sustaining the Government's objection, which would have raised that range still), creating a poor climate for lawyer criticism here.

[13]    The Court first notes, in assessing this claim, consideration of the procedural default doctrine. "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The procedural default doctrine bars "claims that could

The Indictment included a lengthy forfeiture allegation. DE #1, at 3-4. As relevant here, it included 8 itemizations of currency alleged to be forfeitable. *Id.* at 3. The Preliminary Judgment of Forfeiture included two additional items: "$10,000.00 bond posted for Terran Price" and "$25,000.00 bond posted for Terran Price." DE #255, at 1. The Final Decree and Order of Forfeiture also included these items. DE #363, at 2. The record establishes that Sherrie Walton "received" notice of the forfeiture via certified mail on June 2, 2014. *Id.* at 1. April Valentine "refused" her notice. *Id.*

A § 2255 movant must "**claim[] the right to be released** upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). This forfeiture argument does not claim "the right to be released" and thus, foundationally, is not a cognizable claim under § 2255. *United States v. Finze*, 428 F. App'x 672, 677 (9th Cir. 2011) ("Finze's forfeiture claim is not a cognizable §

---

have been raised on direct appeal, but were not[.]" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented Defendant from raising the issue on direct appeal, "not . . . whether counsel erred[.]" *Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986). The Government did not raise the doctrine, but the Court may do so *sua sponte*. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).

Here, Price "failed to assert" any forfeiture-related claim on appeal and thus may not raise any such direct argument on habeas. Movant now does not show either good cause for the default or prejudice, and he makes no showing of actual innocence. Price shows no external cause that prevented him from raising this issue on appeal, and he makes no reference to (and thus does not satisfy) the prejudice prong. Accordingly, Price defaulted any direct forfeiture claim, and the Court dismisses it on this basis alone. However, because Price makes (or endeavors to make) related IAC arguments, the Court alternatively analyzes the merits and directly addresses the IAC claim.

2255 claim, because it does not seek release from custody[.]"); *United States v. Thiele*, 314 F.3d 399, 400 (9th Cir. 2002) ("28 U.S.C. § 2255 is available to prisoners claiming the right to be released from custody. Claims for others types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody."); *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009) ("Mamone cannot utilize § 2255 to challenge his restitution."); *Anders v. United States*, 165 F.3d 26, No. 97-6397, 1998 WL 537568, at *1 (6th Cir. Aug. 7, 1998) (table) ("[A] § 2255 action is not the appropriate vehicle for challenging a civil forfeiture. Anders's Eighth Amendment claim would not be cognizable under § 2255, even if it were assumed that the forfeiture was analogous to a criminal fine, as the imposition of a fine is not a sufficient restraint on liberty to meet the custody requirement of § 2255."); *United States v. Adams*, Nos. 09-25-ART, 10-7138-ART, 2011 WL 2115656, at *7 (E.D. Ky. May 25, 2011) ("[A] § 2255 motion is an inappropriate vehicle for seeking the return of forfeited property.").[14] To the extent

---

[14] Alternatively, even evaluating the claim within a § 2255 rubric, the Court fails to see— and Movant does not meaningfully address—how Price can validly assert alleged constitutional violations **on behalf of third parties**—Mses. Valentine and Watson. Price does not logically assert violations of *his* constitutional rights by forfeiture of this $35,000. *See, e.g.*, DE #398-2, at 51 ("*Price's family* was deprived of the quiet enjoyment of *their* property[.]" (emphases added)); *id.* at 52 (arguing the Government "caus[ed] direct harm to Mr. Price's family members['] property rights"); *id.* at 49 (describing the money as coming from Valentine's and Watson's "own personal funds"); *id.* at 53 (characterizing the funds as "belonging to a third party"); DE #409, at 5-8 (Affidavits). At most, Price says the forfeiture harmed him "because he is responsible to his family" and "because he is responsible for said harm[.]" DE #398-2, at 51-52. These reasons are nonsensical, to the Court. Mses. Valentine and Watson are responsible for their own money, and the basis for the allegation is that the Government—not Price—is responsible for the harm. The Court independently dismisses the Price § 2255 claim on this standing-related ground, although the Court does not address remedies (if any) that may exist for Valentine and / or Watson, acting through appropriate avenues. Again, the record indicates that Walton "received" notice of the forfeiture via certified mail on June 2, 2014, and Valentine "refused" her notice. DE #363, at 1. Neither, despite proper steps

Movant raises an IAC issue regarding forfeiture, the Court fails to see how Robinson ineffectively assisted *Price* by allegedly "permitt[ing] these violations" against his family members—*third parties*. Robinson was Price's lawyer, not Walton's or Valentine's, and Price has articulated no cognizable injury *to him*, remediable under § 2255, based on these allegations. There is no ineffective assistance regarding Movant here.

C.     *Claim Three—Third Point*

Next, Price argues that the "Government withheld the [m]otion under U.S.S.G. § 3E1.1 for the impermissible reason of Price exercising his constitutionally guaranteed right to test the Government's case against him." DE #398-2, at 54.[15] Price also raises the connected claim that Robinson "failed to preserve this issue for appeal[.]" *Id.*; *see also id.* at 45, 56 (making an IAC argument for failing to properly preserve this issue under *Bostic*).[16] The United States responded. DE #412, at 5-6. Regarding the standards:

> U.S.S.G. § 3E1.1(b) provides that, upon motion by the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a guilty plea, thereby permitting the government to avoid preparing for trial, and if the defendant qualifies for a decrease due to acceptance of responsibility and the offense level is 16 or greater, the offense level will be decreased by 1. Further, Application Note 6 to § 3E1.1 provides, in relevant part, that the one-level reduction may be

occurring, timely made a claim to the $35,000. *Id.* at 2. Price also tenders nothing regarding the terms of the at-issue Kentucky state-court bonds.

[15] The Sixth Circuit did not substantively address any such argument, implicating obvious procedural default concerns, though the Circuit did acknowledge sentencing arguments regarding "denial of the third point for acceptance of responsibility." DE #378, at 5. In light of the possible ambiguity, and giving Price the benefit of the doubt, the Court will not deem this argument defaulted.

[16] In the original motion, Price makes an offhand assertion, regarding this third-point argument, that Robinson "breached an agreement with a condition set by the Government that the defendant would not use a cell phone issue in his suppression hearing causing the Government to not move for the additional one point of acceptance." DE #384, at 4 (Issue I). Price never substantiates or elaborates on this phrasing, and the Court considers the claim—the focus of which is "the Government . . . not mov[ing] for the additional one point of acceptance"—subsumed within Price's general § 3E1.1(b) argument.

granted only upon a formal motion by the government at the time of sentencing.

The Sixth Circuit has interpreted § 3E1.1, along with Application Note 6, to mean that the government's discretion to file the motion is limited only by an unconstitutionally impermissible motive or if it is arbitrary. *United States v. Lapsins*, 570 F.3d 758, 770 (6th Cir. 2009).

*United States v. Coleman*, 627 F.3d 205, 214 (6th Cir. 2010). The Sixth Circuit has

fleshed out the contours:

The government's discretion to file the motion is subject only to the limitation that its refusal to do so cannot be based on a constitutionally impermissible factor and cannot be arbitrary. *United States v. Collins*, 683 F.3d 697, 704-05 (6th Cir. 2012). This means that the prosecutor's decision must bear a rational relation to a legitimate government end and must not be based on factors such as religion, sex, or race. *Id.* (citing *Lapsins*, 570 F.3d at 769). The defendant must present "objective evidence of an improper motive or arbitrary action" to overcome the government's decision not to file a § 3E1.1(b) motion. *Id.*

*United States v. Darden*, 552 F. App'x 574, 577 (6th Cir. 2014) (citations slightly

altered).

The United States had no constitutionally improper motive here, and, on this

record, the decision not to move for the third level clearly was not arbitrary. The relevant

discussion at sentencing was in the context of whether Price would receive an

enhancement for obstruction of justice, based on his submission of an affidavit vis-à-vis

earlier suppression proceedings. DE #375, at 4-7, 9-18. The prosecutor stated plainly the

reason for not making the § 3E1.1(b) motion: "I am not going to move for the third level

because even if it[17] doesn't amount to obstructive conduct in the court's position, we are

entitled not to make that motion. It's not arbitrary, it's not for any illegal reason, I think

---

[17] "It," in context, refers to Price's submission of an affidavit during suppression proceedings in which he swore, counter to law enforcement's testimony, that "[a]t no time[] did [he] have the Samsung cell phone around [his] neck outside the residence as indicated in the DEA reports." DE #141-1.

he obstructed justice, he pled without a plea agreement, he was never promised the third level. So that's my position on those issues." *Id.* at 6-7 (paragraph break removed).

Although Judge Caldwell did "not apply the obstruction enhancement," *id.* at 19, she did find "the government . . . well within its rights here" to refuse to make the third-point motion. *Id.* at 20. The Chief Judge was "not aware of any circumstance in this case or any evidence in this case that indicates that the point is being denied for any improper purpose." *Id.*; *see also id.* at 7 (Judge Caldwell noting that Price originally was "attempting to defend the case" but ultimately pleaded guilty, "although it was much later than other defendants," and therefore that "of course denial of the third point would be appropriate in the government's eyes as sort of a measure of . . . having to come in earlier").

Per the clear record, the United States did not refuse to make the motion based on a "constitutionally impermissible factor" or an "arbitrary" reason, such as Price's "religion, sex, or race." *Darden*, 552 F. App'x at 577; *Lapsins*, 570 F.3d at 769-70. Movant certainly has not presented "objective evidence" of such. Nor did the United States refuse to so move based on Price "exercising his constitutionally guaranteed right to test the Government's case against him." DE #389-2, at 54. Rather, the United States declined to make the § 3E1.1(b) motion based solely on Price's submission of an affidavit in which he swore to information the prosecutor rationally perceived as false. DE ##375, at 6-7; 412, at 6. At best, this suggested diluted acceptance and at worst obstruction. Either take suffices as non-arbitrary and permissible for third-level motion denial.

The circumstances are remarkably like those in *Coleman*:

23

Coleman first argues that, because the conduct cited by the United States did not amount to obstruction of justice, its justification for refusing to move for the third level reduction was arbitrary. However, **the reason given by the United States was not that Coleman's conduct was an obstruction of justice, although the United States argued unsuccessfully that it was. The reason given by the United States was that Coleman's actions indicated that he had not accepted responsibility. This justification was based upon a reasonable belief and was thus not arbitrary.**

627 F.3d at 215 (emphasis added) (upholding Government's refusal to move for third point based on the Government's own belief that Coleman's conduct "was inconsistent with acceptance of responsibility").

Per this discussion, the Government's actions were proper, and Price is entitled to no § 2255 relief on this ground. Accordingly, Robinson was not ineffective regarding his advocacy surrounding the issue, nor was he ineffective for failing to properly preserve it for appellate review. "Omitting meritless arguments," either in the district court or on appeal, "is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

D.    *Additional Matters*

1.    The *Bostic* Claim re: the Downward Departure Request

Price also makes an argument, not easily classified among his others for purposes of organization, that Robinson "fail[ed] to properly preserve his [d]ownward departure request" for appeal. DE #398-2, at 45.

The Sixth Circuit, indeed, reviewed the district court's denial of Price's "request for a downward departure or variance . . . for plain error," DE #378, at 5, consistent with a lack of *Bostic* preservation. The Circuit reasoned:

When a defendant "presents nonfrivolous reasons for imposing a different sentence," the district court should address those arguments and "explain

24

why [the court] has rejected" them. *Rita v. United States*, 551 U.S. 338, 357 (2007). "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Id.*

The district court stated that it had reviewed Price's sentencing memorandum, and the record indicates that the district court listened to and was cognizant of Price's arguments for a lower sentence, specifically the government's refusal to move for the third point for acceptance of responsibility, Price's early decision to plead guilty and the benefits to the government of that early plea, policy considerations, and the harshness of the sentencing guidelines. Although the district court did not specifically address Price's arguments for a lower sentence, no explicit rejection is required where, as here, the sentencing transcript reflects that the district court conducted a thorough hearing and considered Price's arguments. *See United States v. Chiolo*, 643 F.3d 177, 184 (6th Cir. 2011); *United States v. Gunter*, 620 F.3d 642, 646–47 (6th Cir. 2010); [*United States v.*] *Wells*, 305 F. App'x [279,] 286 [(6th Cir. 2008)]. No plain error occurred.

*Id.* at 5-6.

From this discussion, it is obvious that appellate review under a more forgiving standard would not have changed the outcome for Price, which eliminates any prejudice, assuming a failure to properly preserve the issue under *Bostic*. Judge Caldwell, indeed, did not specifically address Price's request for "a downward departure or variance." DE #375, at 85-88. However, the Sixth Circuit reviewed Judge Caldwell's sentencing and found it to "reflect[] that the district court conducted a thorough hearing and considered Price's arguments." DE #378, at 6; *see also* DE #375, at 86-88 (Judge Caldwell providing the reasons for the sentence, including consideration of Price's family circumstances, educational background, childhood experiences, current fatherhood, the need to provide a just punishment, drug treatment opportunities, a comparison to Co-Defendant Tomlin, and Price's "significantly lower" criminal history). She was well aware of the third-level issue.

Accordingly, in the circumstances, "no explicit rejection" of the downward departure request "[wa]s required[.]" DE #378, at 6; *see also, e.g.*, *Chiolo*, 643 F.3d at 184-85 & 180 n.1 (specifically rejecting *Bostic* plain error review but nevertheless conducting an essentially identical analysis: "Hence, the district court's express sentencing rationale was logically responsive to all of Chiolo's non-frivolous sentencing arguments. That rationale reflects the court's considered rejection of those arguments, making it unnecessary for the court to expressly confirm this through magic words like, 'I have considered Chiolo's arguments and I reject them.' . . . In light of these facts, the context and the record make clear the court's reasoning in rejecting Chiolo's non-frivolous arguments, such that its failure to expressly address those arguments does not make its sentence procedurally unreasonable." (internal quotation marks, alteration, and citation removed)); *United States v. Jennings*, Nos. 06-79-DCR, 11-7157-DCR, 2011 WL 2446376, at *3 (E.D. Ky. May 25, 2011) (rejecting a "failure to raise further objections during the '*Bostic*' portion of the re-sentencing" argument), *adopted in* 2011 WL 2436553 (E.D. Ky. June 14, 2011). Judge Caldwell's sentencing rationales were "logically responsive to all of" Price's downward-departure-related arguments; she did not need to include "magic words" for the decision to withstand appellate scrutiny. *Chiolo*, 643 F.3d at 184-85. Accordingly, no standard of review alteration would change the Sixth Circuit's prior conclusion on the downward departure matter, meaning Robinson did not render ineffective assistance to Price on this ground.

### 2.     Sentence-Related Arguments

In Price's original filing, he asserted the following ground for relief: "Counsel failed to appeal a prejudicial sentence when the defendant's Criminal History was less

than that of his codefendants, yet he was sentenced to a higher term of incarceration. Counsel failed to argue the substantive reasonable of the sentence." DE #384, at 4 (Issue V) (all as in original). Price effectively abandoned the argument by not providing further explanation in the lengthy memorandum or other filings. Nevertheless, the United States responded. DE #412, at 6-7.

The Court first dismisses any claim here based on Price's dereliction in providing any specific detail to his assertions. *See, e.g.*, *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("When a motion is made to vacate or set aside a judgment under Section 2255, the movant must set forth facts which entitle him to relief. Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to [even] warrant a hearing."); *Ryals v. United States*, Nos. 1:05-CV-238, 1:03-CR-176, 2009 WL 595984, at *5 (E.D. Tenn. Mar. 6, 2009) ("The burden is on Ryals to articulate and plead sufficient facts to state a claim under § 2255. . . . Because Ryals' § 2255 motion merely asserts a vague, general conclusion without sufficient substantiating allegations of fact, the motion fails to state a viable claim and is without merit."); *United States v. Gallion*, Nos. 2:07-39-DCR-01, 2:13-7325-DCR-JGW, 2014 WL 2218361, at *14 (E.D. Ky. May 27, 2014) ("Defendant bears the burden to articulate sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. Because defendant has made only vague conclusory statements without substantiating allegations of specific facts, he has not met that burden and, consequently, he is not entitled to § 2255 relief." (internal quotation marks and alteration removed)).

Alternatively, on the merits, the Sixth Circuit already held, in Price's case:

The district court addressed the relevant 18 U.S.C. § 3553(a) factors, including the nature and circumstances of Price's drug offense; his

27

personal background and criminal history; the need for the sentence to adequately punish Price; the need to afford Price drug treatment, educational and vocational opportunities, and rehabilitation; and the recommended sentencing range under the advisory guidelines. Price's sentence is procedurally reasonable.

DE #378, at 6. To the extent Price perfunctorily challenges his sentence's procedural reasonableness, the Sixth Circuit has already decided the issue, leading to no § 2255 relief.

The Court also addresses the sentence's substantive reasonableness:[18]

[R]eview of a sentence for substantive reasonableness requires inquiry into the length of the sentence and the factors evaluated by the district court in reaching its sentencing determination. Review for substantive reasonableness focuses on whether a sentence is adequate, but not greater than necessary to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a). A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor.

The substantive reasonableness inquiry takes into account the totality of the circumstances, including the extent of any variance from the Guidelines range. [There is] a rebuttable presumption of substantive reasonableness to sentences within the Guidelines.

*United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (internal quotation marks, citations, and alterations removed).

Here, as the Sixth Circuit has already described, Judge Caldwell "addressed the relevant 18 U.S.C. § 3553(a) factors, including the nature and circumstances of Price's drug offense; his personal background and criminal history; the need for the sentence to adequately punish Price; the need to afford Price drug treatment, educational and

---

[18] Price did "not challenge the substantive reasonableness of his sentence" on appeal, DE #378, at 2, meaning that any such direct habeas claim is procedurally defaulted. *Regalado*, 334 F.3d at 528. If Price intended to assert a direct claim, the Court dismisses it on this basis alone. Movant's phrasing ("Counsel failed to argue . . ."), however, suggests he may have intended to raise an IAC argument, so the Court also analyzes the merits.

28

vocational opportunities, and rehabilitation; and the recommended sentencing range under the advisory guidelines." DE #378, at 6; *see also* DE #375, at 86-88. The Court has independently reviewed the entirety of the sentencing transcript and plainly perceives the sentence imposed to be "adequate, but not greater than necessary to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a)." *Cochrane*, 702 F.3d at 345. Judge Caldwell obviously did not "select[ the] sentence arbitrarily, base[] the sentence on impermissible factors, or give[] an unreasonable amount of weight to any pertinent factor." *Id.*; DE #375, at 86-88. Quite to the contrary—the Chief Judge fully and fairly considered Price's family circumstances, educational background, childhood experiences, status as a father, the need to provide a just punishment, drug treatment opportunities, and a comparison to Co-Defendant Tomlin. Further, Judge Caldwell specifically acknowledged Price's "significantly lower" criminal history, the one particular factor about which Price now complains. DE #375, at 87-88. The chosen sentence fell within the applicable Guideline range. *Id.* at 78 (Judge Caldwell finding a 121-151 month advisory Guideline range). The Court has considered the totality, *see Cochrane*, 702 F.3d at 345, and sees utterly no basis to view Price's sentence as substantively unreasonable or that counsel was ineffective for failing to raise a substantive reasonableness argument. Movant, who makes but scant arguments in this regard, is entitled to no § 2255 relief on the stated ground.[19]

### E.   Evidentiary Hearing

Price requests an evidentiary hearing. *See, e.g.*, DE #398-2, at 57. The Court must hold one unless "the files and records of the case conclusively show that the prisoner is

---

[19] To the extent Price makes a cumulative error claim, it, per the above discussion finding no error, "fails because there is no cumulation of errors." *United States v. Bankston*, 820 F.3d 215, 234-35 (6th Cir. 2016).

entitled to no relief." 28 U.S.C. § 2255(b). No hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Price's claims do not warrant a hearing; the § 2255 motion filings and case record conclusively show, for the reasons stated above, that Price's claims fail. Per the above analysis, there are no contested factual issues that justify a hearing;[20] the record decisively forecloses relief.

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

---

[20] The few possible fact questions are not of legal consequence, in the Court's assessment.

*Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* and other claims, for the reasons discussed, all conclusively fail. Reasonable jurists would not find the Court's determinations debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.    RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #384) and issue **NO** Certificate of Appealability.

\*    \*    \*    \*    \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 28th day of March, 2017.



Signed By:

**Robert E. Wier**

**United States Magistrate Judge**